UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Dremco, Inc., | ) | |
| | ) | No. 12 C 8703 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Elizabeth A. Cosgrove Diver, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

## Introduction

This case involves an ordinary state law dispute between a real estate developer and the purchasers of eight units in a townhome development over control of the homeowners' association. In March 2011, the developer, Dremco, Inc., sued the association and the homeowners in state court seeking declaratory and injunctive relief concerning the parties' rights under the operative legal documents. That lawsuit is ongoing. For reasons it has not fully explained, in October 2012, Dremco decided to open a second front in this dispute by also suing the homeowners in federal court. In its complaint, Dremco alleges that the homeowners are engaged in an ongoing criminal enterprise and seeks relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Two of the homeowners moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). R. 15. The remaining homeowners have since joined the motion. R. 18. For the reasons explained below, the homeowners' motion to dismiss is granted.

**Background**

Maple Woods Estates is a townhome subdivision located in Glen Ellyn, Illinois. The subdivision contains six lots and an outlot. On November 17, 2008, the original developer, Maple Woods Estates, LLC, executed and recorded in DuPage County a Declaration of Covenants, Conditions, Easements and Restrictions for Maple Woods Estates (the "Declaration"). Pursuant to the Declaration, Maple Woods Estates was intended to be developed as a 5.65-acre townhouse community together with driveways, walks, paths, a playground, open spaces, and other common areas. From November 2008 through December 2009, the original developer developed Lots 3 and 6 with eight townhome units and sold the units to the defendants here, Elizabeth Cosgrove Diver, Karen Russo, Sadia and Asim Ansari, Tanuja and Mahesh Bijlani, Stephen and Georganna Daley, Sharon Hamilton, Lillian and Roy Koch, and Deborah and Mark Witkowski.

On December 22, 2009, the original developer, through a trust, conveyed the remaining Lots 1, 2, 4, and 5 and the outlot to Dremco. Dremco alleges that as part of this transaction, the original developer intended to and did in fact assign all of its rights under the Declaration to Dremco. Dremco further alleges that under the Declaration, (i) it has the right to appoint all members of the homeowners' association board of directors until all units in Maple Woods Estates are conveyed to *bona fide* purchasers (which has not yet occurred), and (ii) it is not yet required to turn the common areas over to the homeowners' association.

Suffice it to say, Dremco and the existing homeowners did not get along. Dremco alleges that the homeowners improperly took control of the homeowners' association and violated the terms of the Declaration by: (i) changing the names and registered agent for the association with the Illinois Secretary of State; (ii) executing and recording an amendment to the Declaration, without Dremco's consent; (iii) electing a board of directors for the association; (iv) levying and collecting assessments through the association without providing Dremco an accounting; and (v) attempting to levy assessments on Dremco.

On March 3, 2011, Dremco sued the homeowners and the association in the Circuit Court of DuPage County.[1] Dremco's state court lawsuit seeks a declaratory judgment that the actions of the homeowners and their association are null and void and that Dremco has all of the rights of the original developer under the Declaration. It also seeks injunctive relief preventing the association's board of directors from holding further meetings and collecting assessments, and ordering the board of directors to provide an accounting of all assessments and other payments collected from the homeowners. The state court case spawned counterclaims and third-party claims, written discovery has been exchanged, and the parties are now in the middle of scheduling and taking depositions.

On October 30, 2012, Dremco filed this second case against the same group of homeowners, this time in federal court. The underlying factual allegations are taken nearly verbatim from Dremco's state court complaint. After walking through

---

[1] On a motion to dismiss, the Court can take judicial notice of public records such as state court filings. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

the relevant Declaration provisions, Dremco tacks on a three-paragraph RICO claim alleging that the homeowners violated 18 U.S.C. § 1962(c). In the first paragraph, Dremco alleges that the homeowners' association is an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Compl. ¶ 42. In the second paragraph, Dremco alleges that the homeowners are all members of the association and engaged in a pattern of racketeering activity as follows:

> (a) The Homeowners committed multiple acts constituting mail fraud in violation of 18 U.S.C. § 1341 by mailing notices purporting to adopt budgets and to levy assessments in the name of the Association;
>
> (b) The Homeowners have committed multiple acts constituting wire fraud in violation of 18 U.S.C. § 1343 by communicating with Dremco, its lenders and business associates and others, by telephone and e-mail, in the name of the Association;
>
> (c) The Homeowners have filed documents with the Office of the Secretary of State and other public offices which falsely purport to be filed in the name of the Association;
>
> (d) The Ad Hoc Board has purported to levy assessments and has mailed notices to Dremco and others in violation of 18 U.S.C. § 1341; and
>
> (e) The Ad Hoc Board purported to adopt and record a Certificate of Amendment of the Declaration in the Office of the Recorder of Deeds of DuPage County in violation of Section 17.07 of the Declaration while falsely claiming authority to do so.

*Id.* ¶ 43. In the third paragraph, Dremco alleges that it was damaged as a direct and proximate result of this purportedly criminal scheme. *Id.* ¶ 44. Dremco seeks actual damages for mail and wire fraud, treble damages as well as attorneys' fees

and costs pursuant to 18 U.S.C. § 1964(c), and various forms of injunctive relief pursuant to 18 U.S.C. § 1964(a).

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). As a general matter, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Where a civil RICO claim is based on alleged mail and wire fraud, the fraud allegations are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard and must be pled with particularity. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). "[A] RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Id. See also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992).

Moreover, in a case with multiple defendants, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

## Analysis

The Seventh Circuit has repeatedly cautioned that civil RICO claims serve a limited purpose. RICO "does not cover all instances of wrong-doing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). *See also Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). As the Seventh Circuit lamented in *Midwest Grinding*, 976 F.2d at 1025:

> [C]ivil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions. While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.

*See also Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010) (explaining that breach of contract claims "cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal. RICO is not a proper vehicle for levering a breach of contract suit between citizens of the same state into federal court. . . . If such renaming satisfies RICO, we shall see a wholesale migration of breach of contract suits into the federal courts"); *Jennings*, 495 F.3d at 472 ("[T]he statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions."); *Kaye v. D'Amato*, 357 Fed. Appx.

6

706, 717 (7th Cir. 2009) ("Congress enacted RICO to target long-term criminal activity, not as a means of resolving routine commercial disputes.").

With this background in mind, the Court turns to the elements of a RICO claim. RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Thus, to state a claim under section 1962(c), a civil RICO plaintiff must adequately allege: (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. *Gamboa*, 457 F.3d at 705; *Jennings*, 495 F.3d at 472. A "pattern of racketeering activity" requires at least two predicate acts in a 10-year period. 18 U.S.C. § 1961(5). "Predicate acts are acts indictable under a specified list of criminal laws, 18 U.S.C. § 1961(1)(B), including mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343." *Midwest Grinding*, 976 F.2d at 1019.

In its complaint, Dremco does not even come close to stating a viable RICO claim against any of the homeowners. The Court addresses some of the more glaring problems below, but this is not intended to be an exhaustive list. In their motion to dismiss, the homeowners make a number of other arguments that also appear to have some merit, but the Court does not need to reach each and every issue.

**Racketeering Activity**

In paragraph 43 of its complaint, Dremco alleges generally that the "homeowners" committed "multiple acts" of mail and wire fraud. Dremco alleges that the homeowners "mail[ed] notices purporting to adopt budgets and to levy

7

assessments" and "communicat[ed] with Dremco, its lenders and business associates and others, by telephone and e-mail, in the name of the Association." Compl. ¶ 43(a)-(b). Dremco also alleges that the "Ad Hoc Board has purported to levy assessments and has mailed notices to Dremco and others." *Id.* ¶ 43(d).

Dremco clearly fails to plead the predicate acts of mail and wire fraud with particularity, including the basic "who, what, when, where, and how" for each act. *Kaye*, 357 Fed. Appx. at 714; *Slaney*, 244 F.3d at 597; *Goren*, 156 F.3d at 726. It has failed to allege a fraud, and how particular mailings or wirings are in furtherance of that fraud. Similarly, Dremco completely fails to allege racketeering activity by any particular homeowner, as Dremco is required to do. *Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 873 (N.D. Ill. 2007) ("[RICO] liability is limited to persons who have 'personally committed' at least two predicate acts of racketeering. Accordingly, a RICO Plaintiff must, at a minimum, describe the two predicate acts of fraud by each Defendant with some specificity.") (internal citation omitted). As a result, Dremco's allegations fall far short of suggesting that any of the homeowners may have committed even a single predicate act of mail or wire fraud.

Dremco also appears to allege that the homeowners engaged in racketeering activity when they filed documents with the Illinois Secretary of State and other, unnamed public offices (Compl. ¶ 43(c)), and amended the Declaration. *Id.* ¶ 43(e). But Dremco never links these acts to crimes defined as "racketeering activity" in 18 U.S.C. § 1961(1). At one point, paragraph 43 cites to a section "1961(E)," but there is no section 1961(E) (Section 1961 defines certain terms in the RICO statute). To the

extent this is a reference to 18 U.S.C. § 1961*(1)*(E), that section addresses the fact that criminal violations of the Currency and Foreign Transactions Reporting Act can constitute "racketeering activity," which does not appear to have any potential applicability in this case. Dremco never raises the Currency and Foreign Transactions Reporting Act in its complaint or response.

If Dremco's failure to plead these predicate acts with particularity was the only problem with its RICO claim, it might be appropriate to allow Dremco an opportunity to amend its complaint to comply with Rule 9(b). But even if Dremco spelled out each instance of alleged mail or wire fraud, Dremco still cannot establish that the homeowners engaged in a pattern of racketeering activity.

**Pattern of Racketeering Activity**

To show a pattern, Dremco would first have to demonstrate that a defendant committed at least two acts of racketeering activity in a ten-year period. 18 U.S.C. § 1961(5). Although two predicate acts are *necessary*, that alone is not *sufficient* to establish a pattern of racketeering activity. *H. J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1002 (7th Cir. 2004). Ultimately, a civil RICO plaintiff must satisfy the "continuity plus relationship" test: "the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *Midwest Grinding*, 976 F.2d at 1022 (citing *H.J., Inc.*, 492 U.S. at 239); *Jennings*, 495 F.3d at 473.

In assessing continuity, "[r]elevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Jennings*, 495 F.3d at 473 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir. 1986)). No one factor is necessarily determinative. *Id.* Rather, courts evaluate the plaintiff's allegations on a case-by-case basis with the goal of "achieving a natural and commonsense result, consistent with Congress's concern with long-term criminal conduct." *Id.* (quoting *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Illinois*, 424 F.3d 659, 673 (7th Cir. 2005)).

All of these factors easily point to the conclusion that there is no pattern of racketeering activity in this case. Dremco does not allege a large number or variety of predicate acts. The Seventh Circuit has been particularly wary of finding a pattern based only on alleged mail and wire fraud. As the Seventh Circuit observed in *Midwest Grinding*, 976 F.2d at 1025, "all modern business transactions entail use of the mails or wires" and therefore could easily give rise to claims of racketeering. But as the Seventh Circuit explained, "mail and wire fraud allegations 'are unique among predicate acts' because multiplicity of such acts 'may be no indication of the requisite continuity of the underlying fraudulent activity.' Consequently, we do 'not look favorably on many instances of mail and wire fraud to form a pattern.'" *Id.* at 1024-25 (quoting *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1266 (7th Cir. 1990), and *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990)). *See also*

*Jennings*, 495 F.3d at 475 ("We have repeatedly rejected RICO claims that rely so heavily on mail and wire fraud allegations to establish a pattern.").

This case also involves one victim (Dremco), a single scheme (taking over the association), and a distinct injury (Dremco's financial interest in the development). Although predicate acts relating to one scheme and one victim do not *automatically* preclude a pattern, *Jennings*, 495 F.3d at 474, these factors are compelling in this case in the absence of any factor cutting the other way. *Slaney*, 244 F.3d at 599 ("[A] single fraudulent scheme with only one injury to one victim was not a 'pattern of racketeering activity' under § 1962(c) simply because it required several acts of mail and wire fraud to inflict the single injury.") (citing *Lipin Enters., Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986)); *Gamboa*, 457 F.3d at 709 (explaining that there is no pattern of racketeering activity where "the acts as alleged comprise a single effort, over a finite period of time," and that it is "'virtuously impossible for plaintiffs to state a RICO claim' where they alleged a single-purpose scheme with a discrete injury suffered by a small number of victims") (quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 13, 17-21 (1st Cir. 2000), and *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1263, 1265 (D.C. Cir. 1995)).

The remaining factor is the length of time over which the predicate acts were committed. In its complaint, Dremco does not identify the dates of the "multiple acts" of mail and wire fraud. Dremco's response glosses over this issue as well. Dremco merely argues that the homeowners took various actions over a two-year time period (again without providing any actual dates), but as discussed above,

11

Dremco has not explained how most of those actions—*e.g.,* amending the Declaration and the association's articles, electing a board of directors, levying and collecting assessments—actually qualify as racketeering activity under 18 U.S.C. § 1961(1). In any event, these acts do not appear to have occurred over an extended period of time. And although the association will presumably continue to operate for some time, the alleged fraud in this case ultimately relates back to the homeowners' initial efforts to gain control of the association. Apart from ongoing questions about their authority to run the association, there is no suggestion that the homeowners are continuing to engage in a wider course of criminal conduct.

In its response, Dremco cites several cases that did find a pattern of racketeering activity. But each of those cases involved very different circumstances and readily illustrates that there is no pattern in *this* case. In *Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1295 (7th Cir. 1992), after acknowledging that "[r]epeated mailings in furtherance of a single scheme to inflict one fraudulent injury" is not a pattern, the court found that a pattern might exist because the case involved "at least two separate schemes with distinct goals" encompassing "three different episodes of alleged extortion." In *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 523-24 (7th Cir. 1995), after similarly acknowledging that "[o]ur RICO jurisprudence is replete with examples of failed attempts to dress up state fraud claims as suave RICO cases using the expansive definitions of mail and wire fraud," the court found sufficient evidence of a pattern where the acts involved "at least four separate schemes" and "caused separate and distinct

injuries." In *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 963-64 (7th Cir. 1996), after recognizing those same failed attempts to dress up state law claims, the court found sufficient evidence of a pattern based on the extensive number and variety of predicate acts in that case, including securities, mail, and wire fraud, committed over the course of five years. And in *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997), the court found that the plaintiff sufficiently alleged a pattern of racketeering activity where the defendant, over the course of six years, repeatedly and fraudulently induced the plaintiff to invest more and more of its money in a business; at the same time, the court noted that "[i]f the successive transactions . . . had been merely installments in a sale of the company, the requirement of a pattern would probably not have been satisfied, because the reality would have been that there was only a single fraud."

This case does not present any of the distinguishing characteristics from *Shields Enterprises*, *Uniroyal Goodrich*, *Gagan*, or *Kapoor*. The only predicate acts are mail and wire fraud. Dremco itself characterizes the homeowners' actions as a single fraudulent scheme "to usurp the authority of the Declarant under the Declaration." R. 20 at 14. Indeed, the entire dispute between Dremco and the homeowners appears to come down to a single issue of whether the transfer from the original developer to Dremco shifted the right to control the association to the homeowners. And in contrast to *Kapoor*, Dremco's alleged injuries relate to its admittedly one-time purchase of "two thirds . . . of the development area and all of the common areas of the Maple Woods Estates development." *Id.* at 3-4, 14. Even

taking Dremco's conclusory allegations as true, this case would involve a single fraud by the homeowners, not organized, long-term, habitual criminal activity.

As in *Jennings*, 495 F.3d at 473, "even if the [homeowners] used misleading tactics in their various efforts to [take control of the association] (a point on which we take no position), the case lacks any of the hallmarks of a RICO violation. There is no pattern of fraudulent or racketeering behavior. The state courts . . . have ample tools to correct any individual instances of fraud or misconduct."

\* \* \*

One last note. When the homeowners presented their motion to dismiss, the Court specifically asked Dremco to explain in its response (1) why this case is in federal court, and (2) why there is a need for a second case when one is already advancing in state court (recognizing that there is no strict prohibition on dual lawsuits). Surprisingly, Dremco's response is almost entirely silent on these questions. But at one point, Dremco appears to assert that it filed suit in federal court largely because the homeowners have been "adversarial" and are actively litigating the state court case. R. 20 at 2 ("[Dremco] filed a declaratory judgment action in DuPage County, seeking a declaration of its rights. The individual homeowners retained a law firm to represent all of the homeowners and the association, and that law firm filed a Counterclaim in the state court, alleging that [Dremco] no longer has any rights to control the association, and that the homeowners can control the entire development. The RICO action was filed by [Dremco] in response to the actions of the homeowners.").

The Court is deeply troubled (and somewhat baffled) by this response. Not only does it fail to establish any legitimate grounds for filing a RICO claim that levels charges of criminal conduct against the homeowners, it appears to suggest that this lawsuit is little more than retaliation for the homeowners defending themselves in Dremco's state court case (or perhaps an attempt by Dremco to gain leverage and drive up legal fees for a small group of homeowners). The Court hopes that Dremco will explain itself further in response to the sanctions motion that the homeowners have indicated they intend to file. The Court takes spurious allegations of criminal conduct dressed up in a defective civil RICO suit very seriously. Dremco and its attorneys should as well.

## Conclusion

For the foregoing reasons, the homeowners' motion to dismiss, R. 15, 18, is granted. Dremco's complaint is dismissed with prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 3, 2013

15