UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DREMCO, INC., AS BENEFICIARY OF STATE        )
BANK OF COUNTRYSIDE, AS TRUSTEE UNDER        )        No. 12 C 8703
TRUST AGREEMENT DATED DECEMBER 4, 2009       )
AND KNOWN AS TRUST NO. 09-3125,              )
                                             )
                                             )        Judge Thomas M. Durkin
                       Plaintiff,            )
                                             )
            v.                               )
                                             )
ELIZABETH A. COSGROVE DIVER;                 )
SADIA ANSARI; ASIM ANSARI; STEPHEN           )
D. DALEY, GEORGANNA DALEY; LILLIAN           )
KOCH; ROY KOCH; KAREN RUSSO;                 )
TANUJA BIJLANI; MAHESH BIJLANI;              )
SHARON L. HAMILTON; MARK WITKOWSKI;          )
and DEBORAH WITKOWSKI,                        )
                                             )
                       Defendants.           )

## MEMORANDUM OPINION AND ORDER

The Court previously dismissed Dremco's Racketeer Influenced and Corrupt Organizations Act ("RICO") action, 18 U.S.C. § 1961, *et seq.*, under Federal Rule of Civil Procedure 12(b) for failure to state a claim on May 3, 2013. R. 22. The Defendants have since filed a motion for sanctions, asking that the entirety of the fees and costs paid by the Defendants to their attorneys be assessed against Plaintiff's attorneys.[1] R. 23; 30. For the reasons set forth below, the motion is

---

[1] Defendants Stephen D. Daley and Georganna Daley (the "Daley Defendants") filed their motion for sanctions, which the remaining co-Defendants moved to join. R. 30.

granted in part and denied in part.[2]

## BACKGROUND

The Court has already discussed in detail the factual background behind this case, so another elaborate explanation is unnecessary. *See* R. 22 at 2-5. In short, this case involves a dispute regarding Maple Woods Estates, a townhome subdivision located in Glen Ellyn, Illinois. Some of the lots belong to the Defendants—Elizabeth Cosgrove Diver, Karen Russo, Sadia and Asim Ansari, Tanjua and Mahesh Bijlani, Stephen and Georganna Daley, Sharon Hamilton, Lillian and Roy Koch, and Deborah and Mark Witkowski. The remaining lots belong to Dremco.

Dremco alleges that the Defendants improperly took control of the homeowners' association and violated the terms of the original Declaration of Covenants, Conditions, Easements and Restrictions for Maple Woods Estates. As a result, Dremco sued the homeowners and the homeowners' association on March 3, 2011, in the Circuit Court of DuPage County. That case spawned counterclaims and third-party claims, was well underway in October 2012, and as far as the Court knows, is still ongoing.

On October 30, 2012, Dremco filed this case against the same group of Defendants. The complaint's language is copied nearly verbatim from Dremco's state court complaint. But here, the case was brought under 18 U.S.C. § 1962(c), as

---

[2] After the November 20, 2013 evidentiary hearing, the Court denied the motion for sanctions against Plaintiff Dremco. R. 77. This opinion relates to the portion of the motion for sanctions against Dremco's counsel.

Dremco alleged that the homeowners' association is an "enterprise," 18 U.S.C. § 1961(4), and that the homeowners are all members of the association and engaged in a pattern of racketeering activity.

The Daley Defendants moved for dismissal pursuant to Rule 12(b), later joined by their co-Defendants, which the Court granted on May 3, 2013. From the time the suit was initially filed, the Defendants have voiced their skepticism towards the merits and the rationale behind its filing, as discussed in more detail below. Both at the initial status conference in the case and in its dismissal order, the Court expressed similar concerns.

The Daley Defendants filed their motion for sanctions on May 3, 2013. R. 23. It was against Dremco, as a party, and its counsel Richard Jones, personally. *Id.* at 10. The motion did not personally name Mark Daniel, another attorney who has filed an appearance on behalf of Dremco and whose name appeared on the complaint, though the Daley Defendants have contended at various points that the sanction should be imposed against him as well. *See, e.g.*, R. 78. The Daley Defendants requested attorneys' fees ($54,337.41) and costs ($6,132.02) in the amount of $60,469.43. *Id.* The Daleys' co-Defendants sought to join the Daley Defendants' motion, requesting attorneys' fees in the amount of $4,140.00. R. 30 at 2. Dremco filed a response, disputing the Defendants' contention that sanctions are proper as well as claiming that Defendants' counsel's requests for fees are excessive. R. 32; R. 39. Mr. Jones also asked the Court to "consider the impact of the sanctions upon the attorney" and his ability to practice law. R. 39 at 5. The two groups of

Defendants filed replies, both increasing the amount of fees requested. R. 40 (Co-Defendants: $4,140.00 to $6,690); R. 41 (Daley Defendants: $60,469.43 to $74,173.13). Dremco moved to strike the Daley Defendants' reply because it included certain information about Mr. Jones, including his residential address, the vehicles he owns, and other property tax bills. R. 42. The Court denied that motion, concluding that it was all publicly-available information, R. 77, but invited Dremco and Mr. Jones to file additional relevant information regarding their ability to satisfy any sanctions award. R. 44.

In July 2013, Dremco retained new counsel who filed a supplemental response to the Defendants' motion. R. 46; R. 47; R. 52. Dremco argued in its supplemental response that any sanctions award the Court imposed should only be against Dremco's prior attorneys—i.e., Mr. Jones and Mr. Daniel—not Dremco. R. 52. On October 2, 2013, the Court granted Mr. Daniel's motion to withdraw as Dremco's attorney. R. 62. The Court granted Mr. Jones's motion to withdraw as Dremco's attorney on October 23, 2013. An evidentiary hearing was scheduled for, so the Court could assess Dremco's culpability regarding the filing of the this case and what its principal knew or should have known about the Court's preliminary statements on the case's merits and the possibility of sanctions. The issue also was whether Dremco had knowledge of the letters from the Defendants stating that they would move for sanctions if the federal complaint was not withdrawn.

The evidentiary hearing was held on November 20, 2013. Edward McGowan, the largest shareholder of Dremco, testified on Dremco's behalf. Mr. Jones also

testified about what information he shared with anyone at Dremco about this lawsuit and the Rule 11 letters he received. At the conclusion of the hearing, the Court denied the Defendants' motion for sanctions against Dremco as a party. The Court found credible Mr. McGowan's testimony that he did not see any of the correspondence between his attorneys and the Defendants' attorneys and that Mr. McGowan was simply relying on the advice of his counsel on how to get a quicker resolution of the matter and did not suggest that a second lawsuit be initiated in federal court. R. 77; R. 78. The Court also instructed the attorneys that it would not be inclined to award attorney's fees for the hearing or for any further briefing on the motion. R. 78.

On January 17, 2014, Mr. Jones filed another response to the Defendants' motion for sanctions, again arguing that the charges from the Daley Defendants' counsel were excessive and that no attorneys' fees should be awarded to the Daleys' co-Defendants. R. 79. Mr. Daniel filed a position statement with the Court on January 21, 2014. R. 86. In the position statement, Mr. Daniel argues that he "was not involved in the decision to file the claim, the RICO research, communication with [opposing] counsel, the defense of the pleading or the decision not to propose an amendment—if not for the sole purpose of suffering a denial of leave while explaining to the Court how the specific matters supported the claim." *Id.* at 2. Mr. Daniel claims that he "did not practice with any frequency in the RICO area" and that "[Mr.] Jones remained responsible for the RICO substance and research" despite Mr. Daniel's own personal participation in the case. *Id.* at 3-4. Furthermore,

Mr. Daniel claims that he was not named in the Defendants' motion for sanctions and, thus, did not have an adequate opportunity to respond to any Rule 11 violation allegation. *Id.* at 9-16. The Daley Defendants filed a reply to the position statement on January 30, 2014, generally focusing on the case as a whole as opposed to anything particular regarding Mr. Daniel's personal conduct. R. 90. The Daley Defendants also noted that they had by that time incurred and paid $145,322.28 in costs and fees defending the case and pursuing the sanctions motion. *Id.* at 4. On January 31, 2014, the Court stated that it would not accept any further briefing on the motion for sanctions. R. 91.

## ANALYSIS

### I. Appropriateness of Sanctions Against Mr. Jones & Mr. Daniel

This case was doomed from the start. Countless Seventh Circuit opinions have explained what is, and what is not, the purpose of a civil RICO case. RICO "is a unique cause of action that is concerned with eradicating *organized, long-term, habitual criminal activity*." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (emphasis added). This case comes nowhere close to satisfying that explanation. Even more disturbing, and as particularly relevant to this Order, is the fact that the parties were already engaged in a state court action at the time this suit was filed regarding the *exact same facts* at issue here. Neither Dremco nor its attorneys have provided the Court with a single legitimate reason as to why filing this additional suit was proper when another cause of action involving the same underlying facts was already ongoing, despite repeatedly being given the opportunity to do so. *See* R.

22 at 15 ("Dremco's response to the Court's inquiry as to why this case is in federal court appears to suggest that this lawsuit is little more than retaliation for the homeowners defending themselves in Dremco's state court case (or perhaps an attempt by Dremco to gain leverage and drive up legal fees for a small group of homeowners)."); *see also Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (2007) (explaining that the RICO statute "was never intended to allow plaintiffs to turn garden-variety state law . . . claims into federal RICO actions"). As set forth in the opinion dated May 3, 2013, R. 22, the timing of when this suit was filed, coupled with the alleged facts that cannot arguably be viewed as supporting a RICO claim, demonstrates the suit was brought in bad faith and filed for an improper purpose. *See In re TCI., Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law.").

Furthermore, it was not as if Mr. Jones and Mr. Daniel, Dremco's counsel, blindly pursued the RICO claim without an understanding of the consequences. Throughout the pendency of the proceedings, they were consistently told the suit was utterly devoid of merit. For example, shortly after Dremco filed its Complaint, the Daley Defendants sent Dremco's counsel a letter on November 30, 2012, stating that the Complaint should be withdrawn and dismissed, and if it was not, they

would move for sanctions against Dremco under Rule 11. R. 24-1. The letter gave correct legal reasons as to why the complaint was facially deficient. *Id.* Dremco responded on December 17, 2012, asserting that it believed the case was "appropriate for application of the RICO statute." R. 32-7. The case carried on. The Daley Defendants sent a second letter on December 19, 2012, which contained similar language to the November 30 letter. R. 24-2. Neither side has directed the Court to a Dremco response to the December 19 letter. The Daley's co-Defendants also sent Dremco a safe-harbor letter on January 22, 2013, stating that the complaint should be dismissed because a RICO claim could not be established under the alleged facts. R. 30-1. Then, on January 23, 2013, at an initial status hearing on the case, the Court explained to the parties' attorneys:

> I'm puzzled why this case is in federal court. I read the motion to dismiss. I'm not going to pass judgment on it until I've heard from [Plaintiff's counsel] and give[n] him some time to respond, but I would like him to respond in particular about why this case is in federal court . . . .

R. 24-3 at 5:18-24. Dremco's counsel again failed to respond in an appropriate manner, as discussed in the Court's ruling on the motion to dismiss. *See* R. 22 at 15. The failure to respond is telling.

Rule 11 states that "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). The Defendants have contended from the start that the RICO claim was without merit and only filed to harass the Defendants and needlessly multiply the proceedings. R. 24 at 7-8. The Court agrees. Being labeled a

"racketeer" and being associated with a RICO claim carries with it significant negative stigma, and a party and its attorneys should not loosely throw around the term. The Court finds that Dremco's counsel "continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that deficiency was pointed out to it." *See Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008). Such conduct falls squarely within the purview of Rule 11 and warrants an appropriate sanction. It is true that "[c]ourts seek to allocate sanctions between the attorney and the client according to their relative responsibility for the Rule 11 violation," *Borowski v. De Puy, Inc.*, 850 F.2d 297, 305 (7th Cir. 1988), and that "[i]n allocating sanctions, the court must ascertain the extent to which responsibility for the violation rests with client or counsel and to apportion fees appropriately between the two of them," *Painewebber, Inc. v. Can Am Fin. Group, Ltd.*, 121 F.R.D. 324, 335 (N.D. Ill. 1988), *aff'd without opinion*, 885 F.2d 873 (7th Cir. 1989) (internal quotation marks omitted). However, as discussed at the November 20, 2013 evidentiary hearing, Dremco the party was not responsible for the filing of this case and was unaware of the Rule 11 letters, so it should not be liable for any sanctions award. *See* R. 77; R. 78; *Byrne v. Nezhat*, 261 F.3d 1075, 1123 (11th Cir. 2001) ("Sanctionable conduct by a party's counsel does not necessarily parlay into sanctionable conduct by a party."). The Court finds that sanctions are only warranted against Dremco's counsel.

The next issue is which of Dremco's counsel are subject to the sanction award. It is undeniable that Mr. Jones was the lead attorney on the case and was in

charge of its overall direction. He admitted as much at the evidentiary hearing. Accordingly, he is subject to the award.

The more difficult question is whether Mr. Daniel should also be subject to the sanction award. The Defendants did not move for sanctions against Mr. Daniel in their sanctions motion, only listing Mr. Jones and Dremco. Rule 11(c) of the Federal Rules of Civil Procedure requires a party to receive "notice" and have "a reasonable opportunity to respond" before the Court may impose sanctions for a violation of Rule 11(b). Fed. R. Civ. P. 11(c)(1). Because the Defendants did not move for sanctions against Mr. Daniel, he argues that he did not receive proper notice of his conduct that allegedly violated Rule 11(b). *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."). Alternatively, the Court may order an attorney to show cause why certain conduct did not violate Rule 11(b). Fed. R. Civ. P. 11(c)(3). The Court did not do so here. Mr. Daniel thus argues that he is not subject to any award of sanctions under Rule 11(c)(3) either.

Mr. Jones and Mr. Daniel were both attorneys of record for Dremco, both attorneys and their law firms are listed on the bottom of the complaint, and both attorneys have represented the interests of Dremco in pursuing this case, and presumably have been compensated for doing so. So, the argument that Mr. Daniel is unaware of the conduct at issue in the motion for sanctions simply because his name was not explicitly mentioned in the motion is inaccurate. *See Tate v. Ancell*, 551 Fed. Appx. 877, 896 (7th Cir. 2014) (affirming a sanctions award in part

because the attorney "had multiple opportunities to address the basis for the requested sanctions—the legally and factually frivolous nature of the claims at the . . . defendants"). Indeed, he even appeared and testified at the evidentiary hearing to point out that he was not mentioned in the motion for sanctions. He also filed a position paper with the Court, describing his role in the case and his representation of Dremco. In short, Mr. Daniel has been fully aware of the sanctions motions for some time and has had a fair opportunity to respond to it. Sanctioning Mr. Daniel is not procedurally prohibited.

"A district court has inherent power 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Salmeron v. Enter. Recovery Sys.*, 579 F.3d 787, 793 (7th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). The Court may impose sanctions pursuant to its inherent power "only when there is a finding of willful disobedience or bad faith." *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003). As described above, the Court finds that this case was brought in bad faith and for an improper purpose. Mr. Daniel was an active participant in the pursuit of this case and was aware of the letters of November 30, 2012, December 19, 2012, and January 22, 2013; and he is therefore as culpable for bringing the case as is Mr. Jones. Thus, for the same reasons Mr. Jones is subject to sanctions under Rule 11, Mr. Daniel is subject to sanctions under the Court's inherent power for his conduct involving bad faith. To the extent Mr. Jones and Mr. Daniel seek to allocate responsibility between themselves because of their respective culpability, that is a matter for them to decide. As far as the Defendants

were concerned, they were the subject of an improper lawsuit brought by both Mr. Jones and Mr. Daniel. The Defendants also were unaware of which attorney played the more promininent role behind the scenes in bringing the suit. Attaching one's name to a complaint and filing it carries significant responsibilities for an attorney. Rule 11(b)(1) provides that by "signing, filing, submitting, or later advocating [for]" a complaint, the attorney is representing that the suit "is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The Court has found that the suit was brought for an improper purpose and needlessly increased the cost of litigation. By allowing his name to be on the complaint, Mr. Daniel is bound by that rule and must suffer the consequences for a violation of it.[3]

## II.    The Sanction Award

### A. General Observations

The Daley Defendants submitted numerous documents in support of the motion for sanctions. They provided the Court with their November 30, 2012 letter; their December 19, 2012 letter; the January 23, 2013 status hearing transcript; an affidavit from Mark A. Bradford (attorney for the Daley Defendants), which included bills that were sent to the Daley Defendants for services rendered regarding this suit; an affidavit from Samuel B. Isaacson (attorney for the Daley Defendants); an affidavit from Ronald M. Lepinskas (attorney for the Daley Defendants); a second affidavit from Mr. Bradford; a LexisNexis search, Cook

---

[3] Mr. Daniel has never suggested his name was attached to the complaint in error or without his knowledge.

County Property tax information, and Motor Vehicle Reports regarding Richard Jones; and a supplemental affidavit from Mr. Isaacson, which also included bills that were sent to the Daleys for services rendered. R. 24; R. 41; R. 59. The Daleys' co-Defendants submitted their January 22, 2013 letter to Dremco and a list of dates and services rendered by their attorneys. R. 30; 40. Also submitted in support of the motion for sanctions was "Plaintiff, Dremco, Inc.'s Responses to Defendants Stephen and Georganna Daley's First Set of Request[s] to Admit Directed to Plaintiff Dremco, Inc.," R. 75-1; a discovery order from the state court suit dated November 5, 2013, R. 75-2; subpoenas issued to Mr. Jones's law firm with a requested-compliance date of December 3, 2013, R. 75-3; and a second supplemental affidavit from Mr. Isaacson, executed on January 24, 2014, in which he attested that the Daley Defendants paid his law firm an additional $86,067.56 since July 12, 2013, R. 90-1.

Dremco, through Mr. Jones and Mr. Daniel, submitted almost 200 pages of documents with its response to the motion for sanctions, which mainly included documents relating to the underlying state court action, in addition to its correspondence with counsel for the Daley Defendants. R. 32; R. 39. Dremco also filed Mr. McGowan's affidavit attesting to his lack of knowledge of the RICO case in federal court. R. 66. Mr. Daniel submitted his position paper with his supporting affidavit. R. 86

The purpose of a sanction is generally to deter the improper conduct from occurring again in the future. *See Jimenez v. Madison Area Tech. College*, 321 F.3d

652, 657 (7th Cir. 2003) (explaining that "non-monetary, as well as monetary sanction[s], may be applied under the Rule, so long as the sanction is reasonably necessary to deter repetition of the offending conduct"); *Samuels v. Wilder*, 906 F.2d 272, 276 (7th Cir. 1990) ("We remind counsel . . . that Rule 11 and [28 U.S.C.] § 1927 are *sanctions* rules, not compensation devices. Persons required to pay sanctions have no entitlement to a perfect match between the award and the defendants' legal fees[.]"). Recognizing that purpose, a sanctions award can also compensate litigants who paid attorneys' fees that, but for the improper conduct, should not have been incurred. *See Magnus Elecs., Inc. v. Masco Corp.*, 871 F.2d 626, 634 (7th Cir. 1989) ("[A] district judge may impose sanctions equivalent to the attorneys' fees reasonably incurred by opposing counsel."). The sanction here, however, should not be confused with a simple fee-shifting case where all reasonable fees *must* be awarded. The purpose of this order is to sanction the filing of an improper complaint, which was a violation of Rule 11. A reasonable proxy for fashioning a sanction is the fees the Defendants expended in having to defend the action. Rule 11(c)(4) recognizes that a sanction may include "an order directing payment to the movant *of part or all* of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4) (emphasis added).

In this case, the attorneys' fees charged to the Daley Defendants were large. Unfortunately, that is a necessary consequence of being sued as a "racketeer" in federal court. It was appropriate for the Defendants to seek out experienced and

competent counsel to represent them when a mundane state court case was escalated to a federal RICO suit. *See Brandt v. Schal Assoc., Inc.*, 960 F.2d 640, 648 (7th Cir. 1991) ("We have little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks."). Hiring an experienced and competent attorney in Chicago can be expensive. The Court is familiar with attorneys' bills sent to clients. One key feature the Court considers when reviewing the reasonableness of bills is whether they were actually paid by the client. In this case, prior to the May 3, 2013 dismissal order, there was no assurance that the time incurred by Defendants' counsel and the resulting fees would ever be reimbursed by Dremco or Dremco's counsel. If anything, since there is no fee-shifting statute at play, the presumption was that the Defendants would simply have to pay their bills and never receive reimbursement for them. Threatening to seek sanctions if the complaint was not withdrawn provides none of the assurances present in a fee-shifting case that fees will be paid if the suit is successful. Because of that, Defendants' counsel did not have an inherent incentive to "gold-plate" their work and perform unnecessary tasks at the outset of the case. The Defendants likewise had no incentive prior to the dismissal of the complaint to pay a penny more than they thought reasonable under the belief that they would get the money back in the future.

### B. Billing Rates & Staffing

The Court has reviewed the Defendants' counsel's bills and Dremco's counsel's objections to them. Mr. Jones argues that the billing rates charged by the

attorneys for the Daley Defendants were very high. They were. But no affidavits or other evidence was submitted contending that the rates were excessive for attorneys with that experience. Nevertheless, with those rates comes the expectation that work will be done with efficiency. Although a federal civil RICO complaint is serious business, the legal argument supporting its dismissal was not extraordinarily complex or difficult. Nevertheless, two extremely-experienced partners, Mr. Isaacson and Mr. Lepinskas, were working on the case, along with a senior associate, Mr. Bradford. The necessity for two partners billing at $895 and $800 per hour, respectively, and a senior associate billing at $675 per hour (the rates were $850, $650, and $567, respectively, at the beginning of the work), is questionable. There is rarely a need for two partners of their experience to staff a case of this nature, and it appears that the majority of work that this sanction is meant to compensate was done by Mr. Bradford and Mr. Lepinskas, even though Mr. Isaacson may have spent more hours overall on the case than did Mr. Lepinskas. This case was never going to trial. There was never going to be any discovery. This was a research and writing exercise, and three experienced litigators billing collectively at $2370 an hour (at their maximum) is overkill. *See Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989) (explaining that a trial court must "scrutinize a fees petition carefully for duplicative time"). Accordingly, the Court will not award any time Mr. Isaacson spent on this case. The time spent by Mr. Isaacson amounts to 34.8 hours, which resulted in $30,813 in fees billed. This amount is excluded from the final award.

### C. DuPage Litigation

According to Mr. Isaacson's affidavit from July 7, 2013, Mr. Isaacson had the discretion as the billing partner to write off time which, in his opinion, was inefficient and duplicative. The time he wrote off, representing fees of $3,280.50, was not billed to the Daley Defendants. *See* R. 41-1 ¶ 10. Moreover, separate billing numbers were set up for the federal litigation and any work they did on the previously-existing state court case. *See id.* ¶ 11. Thus, only the federal litigation fees are at issue in this motion. Nevertheless, even though separate billing numbers were established at DLA Piper to separately bill the federal suit and the DuPage suit, several items listed on the federal-suit billing sheets appear to relate in whole or in part to the DuPage litigation. Those costs will not be assessed against Mr. Jones and Mr. Daniel. The following time entries of Mr. Bradford and Mr. Lepinskas appear to relate in whole or in part to the DuPage litigation based on the description set forth in the bills and are not allowed: (1) Mr. Bradford—1.20 hours at $567 per hour on 11/27/12 ($680.40); (2) Mr. Lepinskas—1 hour at $650 per hour on 11/28/12 ($650); and (3) Mr. Bradford—.3 hours at $567 per hour on 11/28/12 ($170.10).

### D. Excessive Time Spent on Certain Tasks

The Court must "determine whether the time allotted to [a] given task is reasonable under the circumstances." *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07 cv 3, 2014 WL 1094455, at *3 (N.D. Ind. Mar. 19, 2014). Mr. Bradford's affidavit dated July 12, 2013, noted that he had previous experience

defending RICO claims and was "familiar with leading precedent of the Supreme Court interpreting RICO." R. 41 ¶ 16. With that knowledge, and with the experience his billing rate demands, extensive basic research on RICO would seem unnecessary. At the very least, an associate who does not command a $675 per hour billing rate could do it. Mr. Bradford spent 149.4 total hours on the case. Mr. Lepinskas spent 30.1 total hours on the case, primarily reviewing Mr. Bradford's work.[4] That is excessive, and the Court in its discretion will reduce the overall fees of Mr. Bradford and Mr. Lepinskas by 10%.

### E. Miscellaneous Items Not Directly Related to the Dismissal of the RICO Complaint

An associate at DLA Piper named Andrew Fraerman performed research regarding entity dissolution on December 5, 2012. That research did not directly go to the validity of the RICO complaint, and the Court will not allow those fees to be part of the sanction. Mr. Fraerman's time was .1 hours at $360 per hour, costing $36. The Court will also not allow the 4.2 hours at $360 per hour Mr. Fraerman spent researching "powers of dissolved Illinois limited liability compan[ies]," which cost $1,512. Similarly, a person named Valerie Knopf, whose title is "research staff," billed .2 hours with a cost of $60.00 on November 27, 2012. She looked at Illinois Secretary of State Records regarding the dissolution of Maple Woods Estates LLC. This also does not directly relate to the validity of the RICO complaint and will also

---

[4] These total hour amounts include hours related to issues that the Court will not award compensation for, as discussed below, including time spent regarding the discovery of Mr. Jones's assets, preparing for and participating in the November 20, 2013 evidentiary hearing, and pursuing direct liability against Dremco.

not be allowed. Mr. Bradford's review of the same information will also not be assessed (.5 hours at $567 per hour on 11/27/12 ($283.50). Additionally, a DLA Piper employee named Julie Pabarja, with a rate of $310 an hour, spent .2 hours discussing "cost recovery policy on research resources with [Mr] Bradford" on July 2, 2013, and another .3 hours conducting an "[a]sset search for [Mr.] Bradford" on July 3, 2013. These costs ($155) will not be assessed against Mr. Jones and Mr. Daniel.

**F. Excessive Fees Incurred After Dismissal of the RICO Complaint**

The Court dismissed the RICO complaint on May 3, 2013. The Daley Defendants incurred $54,335.70 in legal fees and $6,132.02 in costs defending the case, per the affidavit of Mr. Bradford dated May 16, 2013. The bleeding should have stopped at that point. Unfortunately, the proceedings and filings multiplied, and the legal fees and costs incurred and paid by the Daley Defendants totaled $145,322.28 by January 30, 2014. How did the fees and costs rise another $91,000 when the case was already dismissed? Several factors were at play. First, the natural tendency of a lawyer and client to have a quasi-adversary relationship regarding bills no longer existed. The belief that someone other than the client will ultimately pay the bill removes the incentive for the monthly client scrutiny each bill receives at or near the time an attorney provides legal services. Second, extensive time was spent by the Defendants' in seeking sanctions against Dremco, not just its attorneys. For reasons stated on the record at the hearing held on November 20, 2013, that attempt was denied. Finally, Defendants spent a significant amount of time and money attempting to show that a large sanction

award against Mr. Jones would not jeopardize his ability to continue to practice law, as Mr. Jones alleged.

By the time of the November 20, 2013 hearing, Dremco had separate counsel from Ungaretti & Harris. The Defendants were not successful in their efforts to have sanctions imposed against Dremco, and the Court cannot see any reason in fairness that any fees and costs resulting from those efforts should come from Mr. Jones and Mr. Daniel. The Court repeatedly made that clear at the hearing, stating in part:

> I'm not going to entertain a motion for sanctions for you to add your costs for conducting this hearing. You decided to bring – attempt to charge Dremco for costs. And I don't think it's fair to award additional costs against Mr. Jones based on your pursuing this hearing, so don't file anything additional relating to expenses occasioned by preparation for or conduct of this hearing.
>
> The lawsuit – you know, the costs and fees relate to the defense of and the briefing and the ultimate receiving a dismissal of the RICO case that you got from me in May. That's what your costs should be.

R. 78. at 123:11-21. The Court sees no reason to change that position. Fees resulting from the Defendants' attempt to subject Dremco to any sanctions award will not be awarded.

Additionally, the Court will not allow the fees resulting from efforts to track down Mr. Jones's assets to be assessed against Mr. Jones and Mr. Daniel. The offending sin in the case was filing a RICO complaint. Reasonable costs incurred to get the case dismissed, as well as the general filing of the motion for sanctions and certain time incurred responding to direct arguments made by Mr. Jones before the hearing on November 20, 2013, are an appropriate sanction for the ill-advised filing.

*See generally Classic Components Supply, Inc. v. Mitsubishi Elecs. Am.*, 841 F.2d 163, 166 (7th Cir. 1988) ("A moving party that bears its adversary's fees and costs will think twice about making motions, as it should; the party in the right will be relieved of the burden that should not have been created in the first place."). The rest of the hemorrhaging costs in this case, although obviously judged reasonable by Defendants' counsel, go beyond what it is necessary to sanction the conduct the Court found improper. The Court in its discretion does not believe it is appropriate to assess a sanction for all of the collateral expenses caused by the extensive litigation the parties engaged in once the complaint was dismissed in the May 3, 2013 opinion. That includes much of the time related to the supplemental filings on the motion for sanctions, as well as the time incurred as a result of the evidentiary hearing on November 20, 2013. *See* 90-1 at 12-19. That time will be deducted accordingly. Also excluded from the final award will be $2,337.17 in extra costs related to legal research and document retrieval between August 5, 2013, and August 31, 2013, *see* 90-1 at 8; $1,411.12 in researching and "duplicating" from October 17, 2013, and October 21, 2013, *see* R. 90-1 at 13; and $2,190 in other costs incurred on November 13, 14, 15, and 20, 2013, *see* R. 90-1 at 19.

The Court is by no means suggesting the time spent by the three attorneys from DLA Piper was not done in good faith. Nor is it suggesting that their client did not receive good value and excellent results from their work. But as noted, the sanction in this case is not entirely a fee-shifting exercise. The size of the award in the case is not intended to be a full reimbursement to the Daley Defendants of all

the fees reasonably incurred in the case, but rather, as a sanction to Dremco's attorneys.

### G. Counsel for the co-Defendants

Briefly moving to the Daley's co-Defendants, the hours and rates charged for their time throughout the case were all appropriate and will be included in the sanctions award. Counsel commendably relied on the counsel for the Daley Defendants to take the lead on the research and writing, and their bills reflect that economy. The Daley Defendants' co-Defendants are entitled to the full $6,690 that they paid their attorneys. *See* R. 40-1.

### CONCLUSION

The Defendants' motion for sanctions, R. 23; 30, is granted in part and denied in part. The Court has considered all of the aforementioned filings as well as the entire record before it in fashioning its award. The Court has carefully reviewed the itemized bills that counsel for the Daley's co-Defendants, the law firm Griffin Williams LLP, submitted to his clients for payment. It has also carefully reviewed the objections to those bills submitted. The Court finds that the fee award should include the following:

- Mr. Bradford: 14.9 hours at $567 per hour: $8,448.30

- Mr. Bradford: 73.7 hours at $675 per hour: $49,747.50

- Mr. Lepinskas: 10 hours at $650 per hour: $6,500

- Mr. Lepinskas: 12.7 hours at $800 per hour: $10,160

- Costs incurred by the Daley Defendants' counsel: $9,220.19

- Fees and costs of counsel for the Daley's co-Defendants: $6,690

The total fee amount resulting from the hours credited to Mr. Bradford and Mr. Lepinskas is $74,855.80. Reducing that amount by 10% (for excessive time) yields an amount of $67,370.22. Thus, the Court will impose sanctions in the amount of $83,280.41. This amount includes the reduced total fee amount of the Daley Defendants' counsel ($67,370.22), certain costs incurred by the Daley Defendants' counsel ($9,220.19), and the fees and costs incurred by the law firm of Griffin Williams LLP, counsel for the Daley's co-Defendants ($6,690). This sanction is against Dremco's attorneys, Mr. Jones and Mr. Daniel, and their law firms, for which they are jointly and severally liable. $76,590.41 should be paid to the Daley Defendants; $6,690 should be paid to the Daleys' co-Defendants. This amount is sufficient to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

ENTERED:

_Thomas M Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: July 7, 2014